IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **TRESEA SNOW**,<br><br>   Plaintiff,<br><br>v.<br><br>**BECTON, DICKINSON AND COMPANY**; **BECTON, DICKINSON INFUSION THERAPY SYSTEMS, INC.**; **B.D. LEAVE AND DISABILITY SERVICE CENTER**; **SEDGWITCK CMS**; and **METROPOLITAN LIFE INSURANCE COMPANY**,<br><br>   Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:22-CV-00811-JNP-JCB<br><br>District Judge Jill N. Parrish<br>Magistrate Judge Jared C. Bennett |

Metropolitan Life Insurance Company ("MetLife"), the sole remaining Defendant, moves for summary judgment on all claims brought by Plaintiff Tresea Snow. MetLife argues that the three-year limitations period in Ms. Snow's insurance plan ("Plan") forecloses her action in this court.[1] Ms. Snow opposes MetLife's motion, insisting that there exists a triable issue as to her receipt (or nonreceipt) of MetLife's final letter denying her disability benefits claim and informing her of the Plan's three-year limitation provision on civil claims. Upon review of the parties' briefing and evidence, the court concludes that this fact is immaterial to the parties' dispute. Ms. Snow's claim would be time barred regardless of whether she received MetLife's final letter. For the reasons set forth herein, Defendant's motion is therefore granted.

**BACKGROUND**

At all relevant times, Ms. Snow was employed by Becton, Dickinson and Company

---

[1] MetLife raises this argument on a summary judgment motion (as opposed to a motion to dismiss) because its motion relies upon evidence outside of the pleadings. *See* ECF No. 16, at 1 n.2.

("B.D."). MetLife provides group long-term disability insurance coverage and benefits to B.D.'s qualifying employees. B.D. promulgated a Summary Plan Description ("SPD"), ECF No. 17-1, to explain the benefits that its employees could be eligible for pursuant to MetLife's Certificate of Insurance, ECF No. 17-2. The SPD distinguishes the Plan's fully insured benefits programs, which include long-term disability benefits, from its self-insured benefit programs. ECF No. 17-1, at 4. The SPD also states that certain benefits, including long-term disability benefits, are governed by the Employee Retirement Income Security Act ("ERISA"). *Id.* at 7. MetLife's Certificate of Insurance supplements the SPD with additional terms, among which is a limitations period for legal actions arising out of claims for Plan benefits. *See* ECF No. 17-2, at 6 ("A legal action on a claim may only be brought against Us during a certain period. This period begins 60 days after the date Proof is filed and ends 3 years after the date such proof is required."). Neither party disputes that the Plan contains this limitation period or contends that the provision is unreasonable.

On December 28, 2018, MetLife acknowledged its receipt of Ms. Snow's long-term disability benefits claim and requested that Ms. Snow submit various forms related to that claim. ECF No. 17-3. Ms. Snow returned completed copies of the requested forms on January 14, 2019. ECF No. 17-4. On April 3, 2019, MetLife then informed Ms. Snow that it was denying her benefits claim. ECF No. 17-5. Twelve days later, Ms. Snow submitted an Appeal Request form, ECF No. 17-6, pursuant to which MetLife sent a copy of a peer review report to Ms. Snow's health care providers for their review and comment, ECF No. 17-7. On July 23, 2019, MetLife alleges that it sent a final appeal determination (the "Final Denial Letter") to Ms. Snow, upholding its prior denial of her claim for Plan benefits. ECF No. 17-9. MetLife retained internal records documenting that it sent this letter to Ms. Snow in the same manner as its previous correspondence with her. *Id.*

MetLife's Final Denial Letter discussed Ms. Snow's right to file a civil action under ERISA

and informed her of the Plan's three-year limitations period for such claims. *Id.* ("If we deny your appeal (in whole or in part), you have the right to bring a civil action . . . . The last date to file this action is July 24, 2022."). MetLife did not receive the return of its Final Denial Letter (or any other letter that it sent to Ms. Snow) as undeliverable. ECF No. 17-11, at 4. Moreover, Ms. Snow has disputed neither that MetLife sent the Final Denial Letter nor that she filed this action on "December 28, 2022, . . . more than five months after the filing deadline of July 24, 2022." ECF No. 20, at 10. Ms. Snow's sole contention appears to be that there exists a triable issue as to whether she received MetLife's Final Denial Letter or "otherwise knew of the three-year limitations period" such that it may be enforced against her. *Id.* at 12.

**SUMMARY JUDGMENT STANDARD**

"Summary judgment is appropriate if the admissible evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Allen v. SouthCrest Hosp.*, 455 Fed. App'x 827, 830 (10th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A movant who bears the ultimate burden of proof at trial must therefore show that no reasonable jury "could find other than for [that] party." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (citation omitted). "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 212, 249–50 (1986) (citations omitted).

**ANALYSIS**

Ms. Snow argues that the Plan's three-year limitation provision is unenforceable because

3

she did not receive the Final Denial Letter and was therefore not informed of the provision. The court presumes, without deciding, that Ms. Snow may be correct. But to what end? The parties contest the granular aspects of the common law mailbox rule, creating the appearance of a genuine dispute as to whether Ms. Snow received the Final Denial Letter and was thereby informed of the Plan's limitation provision. This fact, however, is immaterial to the parties' dispute. If Ms. Snow did not receive the letter, the parties seem to believe that *no* limitation provision would apply to her claims. But that view is mistaken. If the court found the Plan's limitation provision unenforceable, a different limitation provision would apply—the court would borrow a statute of limitation from state law to apply to Ms. Snow's federal statutory claim. And if the court did so, Utah's three-year statute of limitations for claims under insurance contracts would apply to Ms. Snow's suit. In short, whether the Plan's limitation provision can be enforced against Ms. Snow or not, a three-year limitation would apply, and her claim would be untimely one way or another. The court therefore grants MetLife's motion for summary judgment, finding that Ms. Snow's claim is barred as a matter of law.

"ERISA does not expressly provide a limitation period for actions . . . brought under [§ 1332]." *Woods v. Haliburton Co.*, 49 Fed. App'x 827, 829 (10th Cir. 2002) (quoting *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1199 (10th Cir. 1990)) (alteration in original). As a result, insurers—such as Defendants—often include limitations periods in their contracts with insureds. If a plan administrator fails to disclose a plan's limitations period in its denial letters, however, the contractual limitations period is rendered unenforceable. *See, e.g., William G. v. United Healthcare*, No. 1:16-CV-00144-DN, 2017 U.S. Dist. LEXIS 85182, at *8–22 (D. Utah June 2, 2017) (citing *Santana-Diaz v. Metro. Life Ins. Co.*, 816 F.3d 172, 179–80 (1st Cir. 2016); *Mirza v. Ins. Adm'r of America, Inc.*, 800 F.3d 129, 134 (3rd Cir. 2015); *Moyer v. Metro. Life Ins. Co.*, 762

4

F.3d 503, 505 (6th Cir. 2014)).[2] Ms. Snow insists the Plan's limitation provision is unenforceable for precisely this reason.

When Congress creates a federal cause of action without a statute of limitations, the Tenth Circuit has held that "Congress intended that the courts apply the most closely analogous statute of limitations under state law." *Lang v. Aetna Life Ins. Co.*, 196 F.3d 1102, 1104 (10th Cir. 1999) (quoting *Reed v. United Transp. Union*, 88 U.S. 319, 323 (1989)). Thus, when an ERISA plaintiff brings a claim under an insurance plan that lacks a limitations provision (or contains only an unenforceable limitations provision), the plaintiff is not free from time constraints. Instead, the court's duty is to apply the statute of limitations in state law that is "most closely analogous" to the federal cause of action based on the nature of the plaintiff's claim. *Lang*, 196 F.3d at 1104 (citations omitted); *see also William G.*, 2017 U.S. Dist. LEXIS 85182, at *23 (borrowing a Utah statute of limitations after determining an ERISA plan's limitations provision was unenforceable); *Michael C.D. v. United Healthcare*, No. 2:15-CV-306-DAK, 2016 U.S. Dist. LEXIS 64867, at *14 (D. Utah May 17, 2016) (same).

Utah law offers two statutes of limitations that could plausibly apply to Ms. Snow's ERISA action for the recovery of plan benefits. First, the court could apply Utah's six-year statute of limitations, which applies to "any contract . . . founded upon an instrument in writing . . . ." *Lang*, 196 F.3d at 1104 (quoting Utah Code Ann. § 78-12-23 (1996)).[3] Second, the court could apply the

---

[2] In *William G.*, Judge Nuffer adopted this rule, which was pioneered by the First, Third, and Sixth Circuits. He found that rendering a plan's limitations period unenforceable is necessary to effectuate the purpose behind subsection (g)(1)(vi)'s procedural requirement of disclosing a contractual limitations period. 2017 U.S. Dist. LEXIS 85182, at *21–23. The alternative approach, preferred by the Eleventh Circuit, would be to undertake an equitable tolling analysis when an ERISA plan's limitations provision was not disclosed to the insured. *See, e.g., Wilson v. Standard Ins. Co.*, 613 F. App'x 841, 844 (11th Cir. 2015) (unpublished). This court has consistently followed Judge Nuffer's well-reasoned opinion. *See, e.g., E.F. v. United Healthcare Ins. Co.*, 2022 U.S. Dist. LEXIS 60332 (D. Utah Mar. 30, 2022); *Anne A. v. United Healthcare Ins. Co.*, 2022 U.S. Dist. LEXIS 60347 (D. Utah Mar. 30, 2022).
[3] The six-year statute of limitations discussed in *Lang* has since been renumbered as Utah Code § 78B-2-309(1)(b): "An action may brought within six years . . . upon any contract . . . founded upon an instrument in writing[.]"

three-year statute of limitations found in Utah's Insurance Code, which requires litigants to commence claims under insurance contracts within three years after the "inception of the loss." *Id.* (quoting Utah Code Ann. § 31A-21-313(1)). In *Lang*, the Tenth Circuit considered these two options and applied the three-year statute of limitations to a plaintiff's ERISA claim for the recovery of disability benefits under a group policy because that statute was specific to insurance contracts, while the six-year statute of limitations applied to contracts more generally. *Id.* at 1104–05 (citing *Schafer v. Aspen Skiing Corp.*, 742 F.2d 580, 582 (10th Cir. 1984)). Five years later, Judge Cassell distinguished *Lang*, opting to instead apply the six-year statute of limitations to another ERISA claim in *Kerry v. Southwire Co. & Affiliates Employee Benefit Plan*, 324 F. Supp. 2d 1225 (D. Utah 2004). Judge Cassell explained that while the three-year statute of limitations applied in *Lang* to a "group disability insurance policy provided to employees," the six-year statute of limitations applies to "self-funded employee benefits plan[s.]" *Id.* at *1228–29. Self-funded ERISA plans are not group health insurance policies, and the Utah Insurance Code explicitly does not cover "self-insurance." Thus, Judge Cassell concluded, the six-year statute of limitations for general contract claims is more closely analogous to an ERISA plaintiff's claim where a self-funded plan is at issue. *Id.* This court has consistently followed Judge Cassell's reasoned opinion.[4]

*Lang* is more comparable to this case than *Kerry*, and Utah's three-year statute of limitations for insurance contract claims would therefore apply if the Plan's contractual limitation provision were unenforceable. Here, there "is [a] contract with an outside insurer," MetLife, "as was the case in *Lang*." *Kerry*, 324 F. Supp. 2d at 1229. In *Kerry*, by contrast, the plaintiff's claim arose out of a self-insured benefit program. Ms. Snow's claim, however, arises out of MetLife's

---

[4] *See, e.g., Lemon v. E.A. Miller, Inc.*, No. 1:14-CV-107-DAK, 2005 U.S. Dist. LEXIS 32539, at *9–10 (D. Utah Apr. 18, 2005); *Michael C.D. v. United Healthcare*, No. 2:15-CV-306-DAK, 2016 U.S. Dist. LEXIS 64867, at *5 (D. Utah May 17, 2016); *William G.*, 2017 U.S. Dist. LEXIS 85182, at *23; *E.F.*, 2022 U.S. Dist. LEXIS 60332, at *17–18; *Anne A.*, 2022 U.S. Dist. LEXIS 60347, at *17.

offer of long-term disability insurance coverage and benefits to B.D. employees, which the Plan explicitly excludes from its self-insured benefit programs. Unlike in *Kerry*, the Utah Insurance Code's exclusion of self-insurance does not provide a reason to conclude that the three-year statute of limitations for insurance contract claims would not be the most closely analogous to Ms. Snow's claim.

If the court were to find that Ms. Snow did not receive the Final Denial Letter and Utah's three-year statute of limitations for insurance contract claims therefore applied, Ms. Snow's claim would be just as untimely as it is under the Plan's three-year limitation provision. As noted above, the statutory limitation provision would permit Ms. Snow to bring her claim within three years after "the inception of the loss." Utah Code Ann. § 31A-21-313(1). The phrase "inception of the loss" refers "to the first moment that the loss was incurred, not from the moment of the alleged notification to the insured that the insurer would not comply with the terms of the contract." *Canadian Indem. Co. v. K & T*, 745 F. Supp. 661, 664 (D. Utah 1990) (citing *Anderson v. Beneficial Fire & Casualty Co.*, 21 Utah 2d 173, 442 P.2d 933 (1968)).

The plain language of the statute suggests that the three-year period began when Ms. Snow first suffered a "loss," as she did when she became disabled and unable to work. On the other hand, the Tenth Circuit has suggested that the phrase may refer to the moment "when the insurers stopped providing benefits." *See Kang Sik Park v. First Am. Title Ins. Co.*, 743 Fed. App'x 902, 905 (10th Cir. 2018) (unpublished). But this rule could not be applied in the instant case since the insurer never provided benefits. Ambiguity in the precise meaning of the "inception of the loss," however, does little to change the obvious conclusion. Whether the statute's three-year limitation provision began when Ms. Snow became disabled or when MetLife denied her disability benefits claim, the statute's limitation provision would begin no later than the Plan's own limitation provision (and

7

the statute's three-year window may begin much earlier if Ms. Snow's loss incepted when she became disabled).

The court therefore finds that the only factual dispute raised by the parties—whether Ms. Snow received the Final Denial Letter and may be held to the Plan's three-year limitation provision—is immaterial. Her claim is time-barred if she is bound by the Plan's terms, and her claim is time-barred if she is not. Either way, she failed to file her complaint within the time she was permitted, and as a result, her complaint fails as a matter of law. The court thus grants MetLife's summary judgment motion.

**ORDER**

Consistent with this Memorandum Decision and Order, the Motion for Summary Judgment (ECF No. 16) is **GRANTED**.

Signed December 15, 2023

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge